LEMMON, Judge.
This litigation involves a dispute between plaintiff and the chattel mortgagee of his mortgaged automobile over the proceeds of plaintiff’s claim under a credit life and credit accident and health insurance policy.
I
Peninsular Life Insurance Company had issued a creditors group life insurance policy, with a disability insurance rider, to Mike Persia Chevrolet, Inc. Plaintiff purchased a car on credit terms from Persia, and as part of the financing package with General Motors Acceptance Corporation (GMAC), plaintiff purchased credit life and credit disability insurance in the amount of $3,351.96, the certificate being issued for a 30-month period beginning July 25, 1972.
Under the policy Peninsular insured the life of the debtor of the creditor for the *90 amount necessary to discharge the debtor’s indebtedness, and the creditor was named as irrevocable beneficiary. Peninsular further agreed, in the event of disability, to “pay the monthly indemnity shown herein for the remainder of the term of this certificate during which such debtor shall be so disabled”. The disability benefits were payable to the creditor to be applied to reduce or extinguish the indebtedness, with the provision that “(i)f the indemnities exceed the unpaid indebtedness, any such excess will be paid to the debtor”.
In March, 1974 plaintiff became disabled. However, for some reason unexplained in the record, he did not apply for disability benefits until September 23, 1974. In the meantime plaintiff had continued to make sporadic payments to GMAC, but had fallen behind on his obligation by about two monthly payments of $112.56 each.
On October 16, 1974, after several phone calls to plaintiff about the delinquent debt, a GMAC representative persuaded plaintiff to execute a voluntary surrender contract, in which plaintiff agreed to surrender his title to the vehicle in consideration for GMAC’s discharging him “from all further liability” on the chattel mortgage and note, which had an unpaid balance of $1,063.00. The contract further provided:
“For the consideration recited above, I hereby transfer to General Motors Acceptance Corporation any and all rights and claims that I have or may have to any insurance proceeds, premiums or claims on the above-described vehicle.”
Six days later Peninsular issued a check in the amount of $675.36 to GMAC. When plaintiff claimed entitlement to the funds, GMAC refused, and plaintiff filed this suit against Peninsular and GMAC. Peninsular was subsequently dismissed on a pre-trial motion.
At trial plaintiff testified that he implored GMAC to wait for the proceeds of the insurance claim (in a sum about double the amount of the delinquent payments) which had been approved, but that he finally executed the surrender at GMAC’s insistence, with the promise that he would receive the proceeds and that there would be no report which might impair his credit rating. The GMAC representative testified that he knew of the disability claim, but had no idea of the amount claimed. He denied that he promised to turn over the proceeds to plaintiff.
The trial court rendered judgment dismissing plaintiff’s suit, and plaintiff perfected this appeal.
II
On appeal GMAC argues that the dispute is controlled by the contract between the parties, in which plaintiff transferred his claim to any insurance proceeds. However, we do not agree with that construction of the voluntary surrender contract.
The form contract was prepared by GMAC, and the intention of the parties as to the phrase “insurance proceeds, premiums or claims on the above-described vehicle” is a paramount consideration. One could reasonably expect that, at the time of a repossession through voluntary surrender, a debtor might be entitled to the proceeds of a pending collision insurance claim on the vehicle, or might have a yet unpresented insurance claim on the vehicle, or might be entitled to a refund of unused collision or other insurance premiums paid on the vehicle as part of the financing package, and the surrender contract thus might reasonably be construed to contemplate such items. However, since one would not reasonably expect that the debtor would be two or three months delinquent on financing payments and yet not have collected insurance proceeds amounting to six months of payments, the provision of the form contract cannot reasonably be construed as contemplating such proceeds. Moreover, the contract specifically refers to insurance proceeds or claims “on the above-described vehicle”, and these were proceeds on disability insurance, which would not generally be regarded as insurance on the vehicle.
*91 Accordingly, we conclude the parties did not intend to provide specifically in the written contract for disposition of the proceeds of the pending claim under the disability insurance policy.
Ill
We are thus faced with determining the entitlement to the proceeds in the absence of a specific agreement between the parties at the time they executed the surrender contract which extinguished the debt.
If there had been no surrender prior to payment of the insurance proceeds, GMAC would only have been entitled to the amount of the two or three overdue payments and could have been required to turn over the balance to plaintiff in reimbursement for payments made by him during the period he was disabled. Therefore, it is logical that the existence of a surrender agreement (without a specific provision for distributing the proceeds) should not give GMAC any right to claim the portion of the proceeds which otherwise would have reimbursed plaintiff for the payments made by him while he was disabled.
As to the portion of the proceeds which (if no surrender agreement had been executed) would have been applied to bring plaintiff’s account with GMAC to a current status, there is a basic fallacy in GMAC’s position that it is entitled (in the absence of a specific provision in the surrender agreement to that effect) both to the surrender of the vehicle under threat of seizure and to the overdue payments which would have made the debt current and thus eliminated the right to seizure.
As part of its financing package GMAC had plaintiff purchase a credit disability insurance policy, in which GMAC was named irrevocable beneficiary, the purpose of the policy being to insure that GMAC’s credit would be paid if the debtor could not make the payments because of disability. Since it was thus fully protected against a loss due to disability of the debtor, GMAC had an implied obligation, in the event of the debtor’s disability, to look to the benefits provided by credit disability insurance (which in the present case were more than sufficient to catch up the overdue payments and almost sufficient to pay off the balance of the entire indebtedness) before repossessing the mortgaged vehicle. When GMAC chose instead to seek the surrender of the car and to use the delinquent chattel mortgage debt (which would not have been delinquent if the insurance benefits were applied) as a tool for persuading plaintiff to execute the surrender, that choice must be regarded as a forfeiture of any claim to the portion of the insurance proceeds which would have brought the account to a current status.[1]
For these reasons the judgment of the trial court is reversed, and it is now ordered that there be judgment in favor of plaintiff in the sum of $675.36, with legal interest from October 22, 1974 until paid and all costs of the proceedings in both courts.
REVERSED AND RENDERED.

. If GMAC had waited for the forthcoming insurance payment that admittedly had been approved, plaintiff would have had the car, the refund of installment payments made during disability and (if disability continued) the right to claim insurance benefits for the remaining three installments.